ILL UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITY OF CHICAGO,

        Plaintiff,

v.

BP P.L.C., *et al.*,

        Defendants.

No. 24-cv-02496

Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Climate change and its causes is one of the most divisive issues of our time. For some, the burning of fossil fuels is the primary cause of climate change. Municipalities in recent years have sought to hold fossil fuel companies liable for the costs associated with climate change. In this case, the City of Chicago (the City) sued oil companies BP P.L.C., BP America Inc., BP Products North America Inc., Chevron Corporation, Chevron U.S.A. Inc., ConocoPhillips Company, ConocoPhillips, Phillips 66 Company, Phillips 66, Exxon Mobil Corporation, ExxonMobil Oil Corporation, Shell Oil Products Company LLC, Shell PLC, Shell USA, Inc., and their primary trade organization, the American Petroleum Institute (collectively Defendants) in state court, alleging that they misrepresented and concealed information about their fossil fuel products in violation of numerous state laws and various state common laws. *See generally* R. 1-1, Compl.[1] Defendants removed the case to this Court

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

pursuant to 28 U.S.C. § 1442, 28 U.S.C. §§ 1331 and 1441(a). R. 1, NOR. The City moves to remand the case to state court. R. 66, Mot. Remand. For the reasons that follow, the Court grants the City's motion to remand.

### Background[2]

The City alleges that, for decades the fossil fuel industry has misled consumers and the public about climate change. Compl. ¶ 1. Major members of the fossil industry have known for decades that fossil fuels are the primary cause of climate change. *Id.* ¶ 2. The fossil fuel industry knew that, if unabated, climate change could result in catastrophic impacts, including droughts, floods, and severe weather events that would impose enormous harms on cities such as Chicago. *Id.* Rather than warn of these harms, Defendants "mounted a disinformation campaign beginning as early as the 1970s to discredit the burgeoning scientific consensus on climate change . . . ." *Id.* ¶ 6. Defendants "misrepresented and concealed the hazards of fossil fuel products to deceive consumers and the public about the consequences of everyday use of fossil fuel products . . . while knowing the dangers associated with them." *Id.* ¶ 9. Defendants' conduct "drove fossil fuel consumption and delayed the transition to a lower-carbon future." *Id*. This caused, from the City's perspective, "an enormous, foreseeable, and avoidable increase in anthropogenic GHG emissions and accelerated global warming, bringing devastating consequences to the City and its people." *Id*.

---

[2]In considering a motion to remand, the Court "assumes the truth of the operative complaint's allegations at the time of removal, but may also consider facts set forth in the notice of removal." *Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 808 (N.D. Ill. 2021) (cleaned up).

The City sued Defendants in state court asserting causes of action against all Defendants for: strict products liability, failure to warn (Count I); negligent products liability, failure to warn (Count II); negligence (Count III); public nuisance (Count IV); private nuisance (Count V); nuisance violations of MCC § 7-28-030 (Count VI); civil conspiracy (Count VII); unjust enrichment (Count VIII); consumer fraud in violation of MCC § 2-25-090 (count IX); misrepresentations in connection with sale or advertisement of merchandise in violation of MCC §§ 4-276-470, *et seq.* (Count X); and recovery of City costs in violation of MCC § 1-20-020 (Count XI). Compl. Defendants removed the case to this Court based upon 28 U.S.C. §§ 1331, 1441(a), and 1442. NOR. The City moves to remand the case back to state court, arguing that the Court lacks subject matter jurisdiction. The Court agrees.

## Legal Standard

Federal courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapatthah Servs., Inc.*, 545 U.S. 546, 552 (2005). A case may only be brought in federal court when such a cause of action arises under a federal question, 28 U.S.C. § 1331, or where there is diversity of citizenship and an amount-in-controversy exceeding $75,000, *id*. § 1332(a); *see Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437–38 (2019). A defendant may remove to federal court any action filed in state court that "could have been brought originally in federal court." 28 U.S.C. § 1441(a); *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). "The party seeking removal has the burden of establishing federal jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). "Courts should interpret the

removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

## Analysis

Defendants assert that the Court has subject matter jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1) and federal common law. However, the City argues, and the Court agrees, that Defendants have abandoned their contention that the Court has jurisdiction based on federal common law, as this argument is relegated to a footnote in their response.[3] *See* R. 87, Resp. at 2–3 n.2. *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017) ("A party may waive an argument by presenting it only in an undeveloped footnote.") (citing *United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015); *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013)); *see also Sanders v. JGWPT Holdings, Inc.*, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016) ("Arguments in footnotes are typically waived."); J. Valderrama Standing Order, Memorandum of Law Requirements ("Generally, the Court will not consider substantive arguments contained in footnotes."). That is especially true where Defendants bear the burden of establishing federal jurisdiction—they have not met that burden based on the arguments included in their cursory footnote. Therefore, the Court limits its analysis to jurisdiction under the federal officer removal statute.

---

[3]Additionally, at oral argument held on February 5, 2025 (R. 112), counsel for the defense stated that the Court only needs to consider the federal officer removal, and need not consider removal pursuant to federal common law.

The federal officer removal statute permits a defendant to remove to federal court a state court action, if the action is against "[t]he United States or an agency thereof" or a federal officer. 28 U.S.C. § 1442(a)(1); *Raoul v. 3M Co.*, 111 F. 4th 846, 848 (7th Cir. 2024). Federal officer removal is proper "when 'the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense.'" *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020) (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018)). Generally, courts interpret removal statutes narrowly. *See Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147 (2007). Such is not the case, however, when it comes to the federal officer removal statute. In that case, courts construe the federal officer removal statute liberally, not strictly. *Betzner*, 910 F.3d at 1014.

The City argues that the case should be remanded to state court because Defendants do not satisfy the elements of the federal officer removal statute. Specifically, the City advances four arguments for remand: (1) the City does not seek any relief for injuries arising from Defendants' supplying specialized fuels to the federal government for military and national defense purposes; (2) Defendants were not acting under the direction or control of federal officers during any of the activities Defendants cite as grounds for removal; (3) the City does not seek to hold Defendants liable for any act that Defendants allegedly took at the behest of a federal officer; and (4) Defendants have not pled a colorable federal defense. R. 66-1, Memo. Remand at

5

5–6. The City points out that eight courts of appeals have rejected Defendants' removal attempts in similar cases. *Id.* at 1.

Predictably, Defendants disagree, arguing that they have satisfied each element of the federal officer removal statute. Resp. According to Defendants, it matters not that other circuits have remanded similar cases based on similar arguments, since Seventh Circuit authority, and specifically *Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020) is binding on this Court and is dispositive. *Id.* at 2. Because many of Defendants' arguments are based on *Baker*, the Court briefly summarizes that case here and then addresses its applicability to specific arguments in its analysis.

In *Baker,* the plaintiffs, former residents of a housing complex, sued in state court several companies that manufactured industrial materials at a refinery that previously stood on the same land as the complex. The plaintiffs alleged that the defendants polluted the soil in and around their housing complex, exposing plaintiffs to hazardous substances like lead and arsenic. 962 F.3d at 939. The defendants removed the case to federal court under the federal officer removal statute, on the basis that the government directed the defendants or their predecessors to produce certain materials for the military, supervised the distribution of these goods, and controlled their ultimate usages. 962 F.3d at 939–41. The plaintiffs moved to remand the case to state court, which the district court granted, finding that the defendants acted under color of federal office for only a portion of the time covered by the plaintiffs' claims. 962 F.3d at 940.

The Seventh Circuit reversed. The court explained that "where a private contractor helps the Government to produce an item that it needs, the assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Baker*, 962 F.3d at 942 (cleaned up). [4] The court found that the defendants conducted wartime operations under federal authority by producing chemicals that the government would have otherwise had to manufacture and because the government used the chemicals to conduct a war. *Id.* at 942–43. Thus, the defendants "acted under federal authority" when manufacturing those chemicals. *Id.* at 943.

The court then turned to whether the conduct alleged in the complaint related to "acts for or relating to" federal authority. That is, whether there was a causal connection between the charged conduct and asserted federal authority. *Baker*, 962 F.3d at 943. The court rejected the plaintiffs' contention that the defendants failed to show that their injuries were caused by the defendants' wartime production for the government because the plaintiffs mistakenly were demanding "an airtight case on the merits in order to show the required causal connection." *Id.* The court reminded that Supreme Court "jurisprudence teaches that the policy in favor of federal officer removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.* (cleaned up). The court found that Congress, in amending the federal officer removal statute in 2011, "broadened federal officer removal to actions,

---

[4] This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Id.* (emphases in original) (cleaned up). Accordingly, the Seventh Circuit abandoned the "causal connection" test and "join[ed] all the courts of appeals that have replaced causation with connection and expressly adopt[ed] that standard as [its] own." *Id.* at 944. When viewed under that lens, the defendants did not need to allege that the complained-of-conduct itself was at the behest of a federal agency. *Id.* It is enough for the "acting under" test that the allegations are directed at the relationship between the defendant and the federal government. *Id.* at 945. The court concluded that the parties' dispute over whether the plaintiffs' injuries arose from products the defendants manufactured for the government was a causation question that federal courts can resolve. *Id.*

Keeping *Baker* in mind, the Court addresses each of the City's arguments below.

## I.     Disclaimer of Injuries

As a preliminary matter, the City argues that "[m]any of Defendants' removal arguments are irrelevant because the Complaint expressly 'disclaims injuries . . . arising from Defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes.'" Memo. Remand at 6 (quoting Compl. ¶ 11). That is, the Complaint, from the City's point of view, does not place Defendants' sales of specialized military fuels at issue. *Id.* Courts, asserts the City, grant motions to remand where the plaintiff expressly disclaims the claims upon which the federal officer removal was based. *Id.* (citing, *inter alia*,

*Kelleher v. A.W. Chesterton Co.*, 2015 WL 7422756, at *2 (S.D. Ill. Nov. 23, 2015); *Reinbold v. Advanced Auto Parts, Inc.*, 2018 WL 3036026, at *2 (S.D. Ill. June 19, 2018)).

Defendants counter that the City's disclaimer of injuries argument is foreclosed by *Baker*. Resp. at 27. As for *Kelleher* and *Reinbold*, those cases, from Defendants' perspective, are distinguishable as they pre-date *Baker*. *Id.* at 28. And, in a notice of supplemental authority, Defendants point to a more recent Seventh Circuit case, *People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024) and a First Circuit case that relied in part on *3M*, *Gov't of Puerto Rico v. Express Scripts*, *Inc.*, 119 F.4th 174, 192–93 (1st Cir. 2024). R. 97, Defs.' Suppl. Auth.

In *Baker*, in a footnote, the Seventh Circuit addressed and rejected the plaintiffs' purported disclaimer as it contradicted their theory of liability. 962 F.3d at 945 n.3. The plaintiffs purported to disclaim that their lawsuit was about one of the defendant's manufacture of Freon-12 for the government, but because the defendant alleged that its Freon-12 production resulted in waste streams containing lead and arsenic waste, two of the main toxins the plaintiffs claimed harmed them, the court found that the plaintiffs "could not have it both ways." *Id.* Put another way, the Seventh Circuit did not allow the plaintiffs to seek damages for certain types of pollution, while simultaneously disclaiming those same types of pollution for jurisdictional purposes.

In *3M*, like *Baker*, the plaintiffs alleged violations of several Illinois environmental statutes, as well as common law claims, against a company that

produces numerous chemical products in its manufacturing operations. 111 F.4th at 849. The plaintiffs' suit was not premised on any misrepresentations made by the company. The Seventh Circuit agreed with the district court that the plaintiffs' disclaimer—that it would not seek relief against the company for mixed contamination, that is, contamination arising from private and government-contracted conduct—brought the disclaimer outside the scope of the disclaimer in *Baker*, and prevented the defendant from raising a colorable federal contractor defense. *Id*. The plaintiff in *Express Scripts* alleged that defendants "schemed to unlawfully inflate insulin prices through rebate negotiations and price setting." 119 F.4th at 179. Similar to the plaintiffs in *3M*, the plaintiff sought to evade federal jurisdiction by disclaiming any "relief relating to any federal program . . . or any contract related to a federal program." *Id*. at 189. However, the First Circuit found that it was impossible to divide the defendant's negotiations over rebates and prices over insulin between "federal and non-federal work to enforce the disclaimer," and thus, crediting the defendant's theory of the case, the disclaimer did not foreclose colorable federal defenses. *Id*. at 192–93.

Here, the City states in its Complaint that it "hereby disclaims injuries arising on federal property and those arising from Defendants' provisions of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes. [The City] seeks no recovery or relief attributable to these injuries." Compl. ¶ 11 n.6. The Court agrees with the City that neither *Baker*, *3M*, nor *Express Scripts* render the City's disclaimer ineffective. R. 93, Reply at 5–6; R. 99, Pl. Resp.

Suppl. Auth. Unlike in *Baker*, where, as discussed above, there was a contradiction between the plaintiffs' attempt to both recover from lead and arsenic contamination but also disclaim government-controlled production of some of that contamination, here, there is no contradiction between the City's disclaimer and its deception-focused theory of liability. Reply at 5. Indeed, as counsel for the City acknowledged during oral argument, the City's disclaimer, to an extent, is "redundant" because the causes of action brought by the City do not go to the conduct carved out in the disclaimer. As the Third Circuit stated in *City of Hoboken v. Chevron Corp.* about a materially identical disclaimer, "the disclaimers are no ruse . . . [the plaintiffs] carve out a small island that would needlessly complicate their cases." 45 F.4th 699, 713 (3d Cir. 2022); *see also City of Annapolis, Maryland v. BP P.L.C.*, 2022 WL 4548226, at *8 (D. Md. Sept. 29, 2022), *aff'd sub nom. Anne Arundel Cnty., Maryland v. BP P.L.C.*, 94 F.4th 343 (4th Cir. 2024)).

Finally, Defendants are correct that the Court must credit a defendant's "reasonable" theory of the case. *Baker*, 962 F.3d at 947. The Supreme Court has stated that "federal officers 'should have the opportunity to present their version of the facts' on disputes at the heart of their federal service to a federal court." *Express Scripts*, 119 F.4th at 189 (quoting *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)). However, a defendant cannot simply offer "*any* theory of the case, however untethered to the claims of Plaintiffs, because this Court must 'credit' that theory," as doing so "would completely ignore the requirement that there must be a causal connection with the plaintiff's claims." *City & Cnty. of Honolulu v. Sunoco LP*, 2021 WL 531237, at *7 (D.

Haw. Feb. 12, 2021) *(Honolulu I)*, *aff'd*, 39 F.4th 1101 (9th Cir. 2022) (emphasis in original). As the City points out, the Seventh Circuit found that the plaintiff-State's disclaimer made the federal contractor defense "wholly irrelevant under the *State's* theory of recovery" in *3M*. Pl. Resp. Suppl. Auth. at 2 (citing *3M Co.*, 111 F.4th at 849 (emphasis added)). Here, the City's claims are based on Defendants' alleged deceptive and misleading campaign minimizing the dangers of fossil fuel consumption, so there is no contradiction with the City's disclaimer regarding Defendants' provision of fossil fuels to the government for military and national defense purposes.

Even if Defendants were correct that the City's disclaimer is invalid, however, the Court nonetheless agrees with the City that they fail to satisfy other requirements of federal officer removal, as discussed below.

## II. Federal Officer Elements

Briefly, as stated above, federal officer removal is proper "when the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Baker*, 962 F.3d at 941. Starting with the first element, the City does not contend that Defendants, all corporations, are not persons under § 1442(a). No matter, as the Court finds that Defendants easily satisfy the first element for federal officer removal. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (Congress did not exclude corporations as "persons" under § 1442(a)).

Instead, the City maintains that Defendants do not satisfy the remaining elements for federal officer removal. The Court addresses each in turn.

### A. Acting Under Federal Officers

The second element, the "acting under" requirement, looks to the relationship between the defendant seeking to remove the case and the United States, its agencies, or its officers. *Roberts v. Smith & Wesson Brands, Inc.*, 2023 WL 6213654, at *5 (N.D. Ill. Sept. 25, 2023) (*Roberts I*), *aff'd,* 98 F.4th 810 (7th Cir. 2024). This element includes situations where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete. *Ruppel*, 701 F.3d at 1181. "Acting under" covers situations where defendants work "hand-in-hand with the federal government to achieve a task that furthers an end of the federal government." *Id*. Similarly, this element is satisfied where the government enlists a private party in "'an effort to *assist*, or to help *carry out*, the federal superior's duties or tasks.'" *Id*. (quoting *Watson*, 551 U.S. at 152 (emphases in original)). Defendants insist that they were "acting under" federal officers when they engaged in several activities, detailed briefly below.

First, Defendants contend that they acted under federal officers by repeatedly performing critical and necessary functions for the U.S. military to further national defense. NOR ¶ 22. More specifically, that they acted under federal officers when they produced aviation fuel gas or "avgas" and operated petroleum infrastructure, particularly during World War II and the Korean War. *Id.* ¶¶ 29, 31. Second, Defendants maintain that they "continue to produce and supply large quantities of

13

highly specialized fuels that are required to conform to exact DOD specifications" to the military to this day. Resp. at 12; NOR ¶¶ 45–55. Third, Defendants contend that removal is appropriate because of the role of Standard Oil of California, a Chevron predecessor, in operating Elk Hills Reserve in California. NOR ¶ 59. The Elk Hills Reserve was a petroleum reserve created in 1912 intended to preserve oil in the ground for national emergencies. *Id.* ¶ 58. Standard Oil, note Defendants, operated the U.S. Navy's portion of the oil reserve according to an Operating Agreement which specified that Standard Oil was "*in the employ of the Navy Department* and [was] responsible to the Secretary thereof." *Id.* ¶ 70 (emphasis in NOR). Standard Oil, insist Defendants, operated Elk Hills under the "subjection, guidance, or control" of the Navy. *Id.* ¶ 72 (quoting *Watson*, 551 U.S. at 151).

Fourth, Defendants assert that they acted under federal officers "by producing oil and gas pursuant to the federal mineral exploitation and production regime created by the Outer Continental Shelf Lands Act." NOR ¶¶ 82–109. The federal government, according to Defendants, "retained the power to direct how oil and gas resources would be extracted and sold from the [Outer Continental Shelf (OCS)]." *Id.* ¶ 82. Fifth, and finally, in response to the 1970's oil embargoes, Congress created the Strategic Petroleum Reserve to reduce the impact of disruptions in supplies of petroleum products. *Id.* ¶ 117. Defendants insist that they acted under federal officers by supplying federally owned oil for gas and managing the Strategic Petroleum Reserve for the government. *Id.* ¶¶ 119–20. The federal government,

assert Defendants, required certain Defendants or their predecessors to pay royalties in kind, which the government used for its strategic stockpile. *Id.* ¶ 120.

The City takes issue with each of Defendants' activities for which they claim they acted under federal authority, raising four primary arguments that pertain to some or all of the activities. The Court addresses each in turn.

As an initial matter, the City contends—and the Court agrees, as explained above—that the City's disclaimer excludes injuries caused by Defendants' production of avgas during World War II and the Korean War, as well as sales of specialized, non-commercial fuels to the military at any time. Memo. Remand at 6–8; Reply at 5. So too with Defendants' interactions with the Strategic Petroleum Reserve. Memo. Remand at 13 (citing *Hoboken*, 45 F.4th at 713).

The City also argues that none of the above-listed activities demonstrate federal control because they were not closely controlled by the government, but rather demonstrate "the story of a narrow business relationship," and which other courts, including several appellate courts, have found to be insufficient to show the requisite "subjection, guidance, or control" required for the "acting under" element. Memo. Remand at 11–12; Reply at 14–15 (citing, *inter alia*, *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 235–38 (4th Cir. 2022); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1109 (9th Cir. 2022) *(Honolulu II)*); *see also* Memo. Remand at 9 (citing *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 757 (9th Cir. 2022) ("a person is not 'acting under' a federal officer when the person enters into an arm's-length business arrangement with the federal government or supplies it with

widely available commercial products or services."); *Roberts v. Smith & Wesson Brands, Inc.*, 98 F.4th 810, 814 (7th Cir. 2024) (*Roberts II*) ("[A] business *might be* 'acting under' a federal officer if the officer commanded it or contracted with it to produce *a particular item in a specified way*.") (emphasis in brief); Memo. Remand at 9–16. Additionally, argues the City, Defendants simply complied with federal laws, rules, and regulations when they executed the listed activities, which is insufficient to constitute acting under a federal officer. Memo. Remand at 8–9 (citing, *inter alia*, *Kelly v. Martin & Bayley, Inc.*, 503 F.3d 584, 588 (7th Cir. 2007)); *id.* at 9–16. In support of its contentions that Defendants' activities are merely arms-length transactions or constitute compliance with federal rules, the City cites to numerous out-of-Circuit cases that have rejected similar arguments and exhibits raised by Defendants. *See, e.g.*, *id.* at 11–12; Reply at 14–15 (citing, *inter alia*, *Mayor & City Council of Baltimore*, 31 F.4th at 235–38; *Honolulu II*, 39 F.4th at 1109).

Defendants retort that under *Baker*, their activities satisfy the acting-under standard. That is, Defendants' fuel production and sales activities were done according to "detailed specifications," under federal "compulsion," and subject to "continuous federal supervision"—which, Defendants argue, suffices to meet the acting-under standard under *Baker*. Resp. at 6–7 (quoting *Baker*, 962 F.3d at 943). Additionally, posit Defendants, much of the activity, including their supply of specialized fuel to meet Department of Defense demands, would have had to be performed by the Government in the absence of the contracts with Defendants. *Id.* at 13 (citing *Baker*, 962 F.3d at 942). As discussed above, the Court finds that the City's

disclaimer forecloses Defendants' reliance on the provision of specialized fuels to the military. If the disclaimer were not effective, however, the Court finds that Defendants' argument has merit.

The City's reliance on out-of-Circuit cases is insufficient on this point, as the Court agrees with Defendants that the Seventh Circuit adopted a broader interpretation of the "acting under" standard in *Baker* than other Circuits have applied. For example, the Fourth Circuit in *Mayor & City Council of Baltimore v. BP P.L.C.*, rejected the defendants' argument that they acted under federal officials when it "helped the Government to produce an item that it needs" by selling fuel for resale on Navy bases, as "such logic would bring every seller of contracted goods and services within the ambit of § 1442 when the government is a customer." 31 F.4th at 230 (citing *Watson*, 551 U.S. at 153). As Defendants point out, however, *Baker*'s holding is more encompassing, in that it found that the defendants' sale to the government of materials it needed for war efforts *was* sufficient to satisfy the acting under requirement. Resp. at 16 (citing *Baker*, 962, F.3d at 942). The City's citation to *Roberts* does not change that analysis. Reply at 14. In *Roberts*, the Seventh Circuit cited to *Watson* in support of the proposition that "a business might be 'acting under' a federal officer if the officer commanded it or contracted with it to produce a particular item in a specified way." 98 F.4th at 814. But the defendant in *Roberts* did not contend that the government directed it to make a weapon at all, let alone for any wartime purpose.

17

No matter, because the Court agrees with the City that, not only does the disclaimer foreclose the above argument, but also the timing of certain activities and the relationship of the activities to the crux of the City's claims do not support a finding that Defendants were acting under a federal official. Specifically, the City argues that Defendants' activities during World War II and the Korean War cannot justify federal officer removal because Defendants' activities during those wars predate the deceptive conduct alleged in the Complaint. Memo. Remand at 14 (citing *Anne Arundel*, 94 F.4th at 349; *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 144 (2d Cir. 2023)). Similarly, the City posits that Standard Oil of California's status as the operator of the Elk Hills petroleum reserve does not preclude remand, as it "precedes and bears no relationship to Defendants' charged conduct." Reply at 15. Defendants respond that the fact that these activities pre-date the alleged disinformation campaign, is of no moment because "the emissions from these wartime periods are indistinguishable from and cumulative with all later emissions." Resp. at 12.

The City correctly points out that several circuit courts have rejected similar arguments—and declarations cited in support—raised by Defendants. *See* Reply at 10. As the United States Court of Appeals for the District of Columbia recently noted in a similar case:

> But the District does not allege the Companies acted unlawfully until the late 1980s, and none of the alleged misrepresentations bears any relationship to the sale or production of military fuels in the mid-20th century. There is simply no relationship between actions taken by the Companies' predecessors in the

1940s and 1950s and the allegedly deceptive statements made by the
Companies about climate change since 1980.

*D.C. v. Exxon Mobil Corp.*, 89 F.4th 144, 156 (D.C. Cir. 2023); *see also Anne Arundel
Cnty.*, 94 F.4th at 349 (same).

The Court finds this reasoning persuasive. Here, the City's Complaint does not
take aim at Defendants' *production* of fossil fuels during World War II or the Korean
War for that matter. Instead, the Complaint takes issue with Defendants' alleged
*campaign of deception and misrepresentation* in the 1980s of the dangers of fossil fuel
vis-à-vis the environment. The fact that Defendants acted under the federal
government by operating and managing government-owned and/or government-
funded petroleum production facilities is of no import. Unlike the claims in *Baker*,
this case is about Defendants' alleged misrepresentations; not their work with or on
behalf of the government that led to or contributed to fossil fuel emissions.

So too with Defendants' more recent activities, involving the "extraction of
gasoline or operation of energy infrastructure, either under federal regulations or via
commercial relationships with the federal government." *Anne Arundel*, 94 F.4th at
349. As discussed in more detail below, the Court agrees with the Fourth Circuit's
analysis that Defendants' activities involving "fossil fuel production rather than
concealment or misrepresentation of information about fossil fuel products," cannot
support the acting under element because "those activities fail to show the required
relatedness," and the defendants did "not argue the federal government required
them to market or describe their products in a certain way." *Id.* Similarly, Defendants
in this case do not argue that the government required them to market their products

in any specific way. For the foregoing reasons, the Court agrees with the City that Defendants fail to satisfy the acting under element of federal officer removal.

### B. Relation to Charged Conduct to Acting under Color of Federal Authority

The third element requires that the gravamen of the claim against Defendants occur while they acted under color of federal authority. "[T]his requirement is distinct from the 'acting under' requirement in the same way a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage—there must be a causal connection between the charged conduct and asserted official authority." *Ruppel*, 701 F.3d at 1181 (cleaned up).

Defendants argue that the City's claims are "for or relating to" acts Defendants performed under color of office. NOR ¶ 128. To satisfy this element, assert Defendants, there need only be a "connection or association with acts under federal office." *Id.* (quoting *Baker*, 962 F.3d at 943) (cleaned up). It is not necessary, argue Defendants, that the complained-of conduct itself was at the behest of a federal agency. *Id.* ¶ 130; Resp. at 21. In *Baker*, point out Defendants, the Seventh Circuit held that it was "enough for the present purposes of removal that *at least some* of the pollution arose from the federal acts." Resp. at 21 (quoting 962 F.3d at 945) (emphasis in brief). From Defendants' perspective, here, as in *Baker*, the only environmental harms are those caused by emissions arising from acts undertaken at the direction of federal officers. *Id.* Along the same lines, posit Defendants, "[p]roduction and consumption are integral components of [the City's] alleged causal theory," such as the City's allegations that Defendants' extraction and sale of fossil fuel products have

20

led to an increase in greenhouse gas emissions, which have caused devastating climate change impacts to the City. *Id.* at 22 (citing Compl. ¶¶ 1, 4). The Court cannot, argue Defendants, allow the City to evade federal jurisdiction by focusing just on Defendants' alleged deception (the complained-of conduct), and not on the production, sale, and consumption of oil and gas producing emissions (the alleged mechanism of injury), as doing so would improperly "elevate form over substance and allow parties to evade" federal court. *Id.* at 23 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) and citing *Jarbough v. Att'y Gen. of U.S.*, 483 F.3d 184, 189 (3d Cir. 2007); *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256 (4th Cir. 2021)). At bottom, the Court must examine the "gravamen" of the Complaint and set "aside any attempts at artful pleading." *Id.* at 22 (quoting *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 169 (2017) and citing *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015)).

The City counters that Defendants misread *Baker*'s statement that federal-officer removal does not require "that the complained-of conduct *itself* was at the behest of a federal agency." Reply at 7 (quoting *Baker,* 962 F.3d at 944). The way the City sees it, this statement is simply another way to say that federal-officer removal does not require a strict "causal connection" between a defendant's charged conduct and federal authority, but rather a non-causal "connection or association" will suffice. *Id.* Indeed, the Seventh Circuit made clear that the focus remains on whether there is a "connection or association" between the charged conduct (i.e., "the challenged

act") and federal authority. *Id.* (citing *Baker*, 962 F.3d at 944–45 (quotations omitted)).

As for the other cases cited by Defendants, the City argues that they are inapposite. In *Frye*, the Supreme Court analyzed whether the plaintiff's claims were subject to the Individuals with Disabilities Education Act's administrative exhaustion requirement, and in that context, "explained that 'the gravamen of a complaint' was defined by the 'conduct that violated' the law, not by the 'nature' of a plaintiff's injuries." Resp. at 7–8 (quoting 580 U.S. at 169–71, 174). And in *Sachs*, the Supreme Court construed an exception to the Foreign Sovereign Immunities Act, not the federal-officer removal statute, and did not address the phrase "for or relating to." *Id.* at 7 (citing 577 U.S. at 35). None of the other cases cited by Defendants are even close to being on-point, as none address federal-officer removal. *See id.* at 8. As for Defendants' contention that the City engages in "artful pleading," the City posits that that exception to the well-pleaded complaint rule pertains only to federal-question jurisdiction, which Defendants have waived. *Id.* at 8 (citing *Burda v. M. Ecker Co.*, 954 F.2d 434, 440 (7th Cir. 1992); *Hoboken*, 45 F.4th at 713 ("Artful pleading disguises federal claims as state ones. Yet here, there are no federal claims to disguise.")).

The Court agrees with the City that *Baker* does not stand for the proposition that federal officer removal may be based on a relation to a plaintiff's injuries rather than to the claims themselves. So, as stated above in relation to the City's disclaimer, the Court agrees with the City and out-of-Circuit cases addressing substantially

similar claims and arguments that the nexus element does not authorize Defendants to rewrite the City's claims into something they are not. Resp. at 9 (citing *Honolulu I*, 2021 WL 531237, at *7 ("[I]f Defendants had it their way, they could assert any theory of the case, however untethered to the claims of Plaintiffs, because this Court must 'credit' that theory"); *Delaware v. BP Am., Inc.*, 578 F. Supp. 3d 618, 636 n.21 (D. Del. 2022) (rejecting Defendants' "misunderst[anding]" that "the Court must credit their 'theory of the case'")). Accordingly, the Court finds that the charged conduct is insufficiently connected to any acts taken by Defendants under federal authority to support federal officer removal.

### C. Colorable Defense

The fourth and final element for federal officer removal is the existence of a colorable defense. Defendants must establish that they have a "colorable" federal defense to the City's claims. This requirement "not only satisfies Article III jurisdiction, [but] also encapsulates Congress's desire to have federal defenses litigated in federal forums." *Ruppel*, 701 F.3d at 1182. Defendants assert that they have several colorable defenses to the City's claims: the government contractor defense, preemption, federal immunity, NOR ¶ 141, as well as the Interstate and Foreign Commerce Clause, the Supremacy Clause, the Due Process Clause, and the foreign affairs doctrine, *id.* ¶ 144. The City argues that none have merit.

#### 1. Government Contractor Defense

As the Seventh Circuit explained in *Baker*, "[t]he government contractor defense, developed in *Boyle v. United Technologies Corp.*, [487 U.S. 500, 511–12, 108

S.Ct. 2510, 101 L.Ed.2d 442 (1988),] immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design." *Baker*, 962 F.3d at 946–47 (cleaned up). The "defense applies where (1) the federal government approved reasonably precise specifications, (2) the manufactured equipment conformed to the government's specifications, and (3) the contractor warned the federal government about the equipment's dangers that were unknown to the government." *Id.* (cleaned up).

Defendants maintain that they produced oil and gas at the direction of the federal government and thus have a colorable argument that they are immune from liability for any alleged injuries resulting therefrom. NOR ¶ 142. *Baker*, from Defendants' perspective, demonstrates that the government contractor defense is applicable here. *Id.* ¶ 143.

The City contends that, not only has it disclaimed injuries relating to the military sales of specialized fuels, but also the federal contractor defense has nothing to do with the Complaint. Resp. at 19; Reply at 17–18. For the same reasons discussed above, the Court agrees that the federal contractor defense is unavailable to Defendants based on the City's disclaimer, and importantly, the fact that Defendants do not allege that the government ordered their allegedly deceptive acts. *See Honolulu II*, 39 F. 4th at 1110 (rejecting government contractor defense as there was no allegation that government ordered deceptive conduct).

### 2. Remaining Defenses

As for Defendants' remaining alleged defenses, the City argues that these defenses are inapplicable as "they have nothing to do with the actions Defendants claim they took under federal direction." Memo. Remand at 19. Again, the Court agrees. As the City correctly notes, the defenses do not arise from any official duties.

### III.    Request for Fees

The City requests that the Court award it fees and costs under 28 U.S.C. § 1447(c), due to Defendants' "objectively baseless removal arguments" that have been soundly rejected by myriad courts, including courts of appeal in eight different circuits. Memo. Remand at 3, 30. Predictably, Defendants disagree, taking the position that they raise "numerous meritorious grounds for removal." Resp. at 29. True, as the City points out, most of Defendants' arguments and exhibits are recycled and have been rejected by every out-of-Circuit court to consider them. Still, the Court cannot say, in the face of *Baker*, that Defendants "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Although the Court finds *Baker* distinguishable in relevant part, and therefore disagrees with Defendants that it precludes removal, Defendants' arguments based on *Baker* were reasonable, such that the Court finds that an award of attorneys' fees would be improper. *See id.*

### Conclusion

For the foregoing reasons, the Court grants the City's Motion to Remand [66] in part and denies it in part. It grants it in part, in that the case is remanded and the

Clerk's Office is directed to remand this case to the Circuit Court of Cook County, Illinois immediately. It denies it in part, in that the Court declines to award the City fees and expenses.

Date: 5/16/2025

United States District Judge
Franklin U. Valderrama