CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 25-1916

CITY OF CHICAGO,

*Plaintiff-Appellee,*

*v.*

BP P.L.C., et al.,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-cv-02496 — **Franklin U. Valderrama**, *Judge.*

_____

ARGUED JANUARY 28, 2026 — DECIDED JULY 15, 2026

_____

Before HAMILTON, MALDONADO, and TAIBLESON, *Circuit Judges*.

TAIBLESON, *Circuit Judge*. The City of Chicago has sued major fossil fuel companies from all over the world, seeking to recover certain damages stemming from global warming. The defendants removed this action from Illinois state court to federal court pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. The district court remanded, and we affirm.

Suits like this one have proliferated all over the country, and many raise difficult and novel legal questions. *See, e.g., Suncor Energy (U.S.A.) Inc. v. Cnty. Comm'rs*, 146 S. Ct. 1605 (2026) (mem.) (granting certiorari). But this one does not. Chicago has defined its claims narrowly: It alleges that the defendants misrepresented the effects of fossil fuel emissions on global warming, and it seeks compensation only for harm resulting from the increase in fossil fuel consumption attributable to those misrepresentations. The defendants, for their part, invoke federal jurisdiction only on the grounds that this suit relates to their fuel production for the federal government. We conclude that the defendants' federal work is too attenuated from Chicago's claims to support removal at this time.

### I. Background

In March of 2024, the City of Chicago sued fourteen energy companies and a related trade association in Illinois state court. These companies (the defendants here) extract fossil fuels, refine them, and sell them to end users, including the federal government.

The City's complaint asserted eleven counts, all arising under state or local law—including products liability for failure to warn, negligence, public and private nuisance, unjust enrichment, consumer fraud for deceptive practices, and misrepresentation. In substance, Chicago claims the defendants long understood the climatic effects of burning fossil fuels, but they intentionally concealed and misrepresented those effects and obscured their own roles in causing climate change. As a result of the defendants' alleged misinformation campaign, Chicago claims it suffered a variety of harms, including "heat-related deaths and illness, worse air quality, … increased reliance on costly electricity[,] … sewage overflows,

No. 25-1916                                                                    3

contamination of local waterways, … transit disruptions[,] … shoreline erosion, property damage, and the potential for toxic algae blooms." Chicago therefore seeks monetary damages from the defendants, but only to the extent that their misconduct "led to consumers using more fossil fuels, and using fossil fuels less efficiently, than they otherwise would have."

The defendants removed the suit to the Northern District of Illinois pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). That statute authorizes a federal officer or "person acting under that officer" to remove suits in state courts "for or relating to any act under color of such office." *Id.* To support removal, the defendants pointed to their work over the past century to produce fossil fuels for, or in conjunction with, the federal government. During and after World War II, for instance, some of the defendants' predecessors provided large amounts of fossil fuels to the military under the direction of federal agencies, including the Petroleum Administration for War. That production included specialized fuel—for example, some defendants produced high-octane aviation gasoline through the end of the Korean War. The defendants' fossil fuel production for the military continued through the Cold War, including specialized jet fuel for the U-2 spy plane and the government's OXCART and SR-71 Blackbird programs. And the U.S. military maintains contracts with some of the defendants for similar fuels through the present day.

The defendants emphasized that they also produced oil on behalf of, at the direction of, or by permission of the federal government outside the war context. Between 1944 and 1975, Standard Oil (a predecessor of some defendants) operated the Elk Hills Reserve oil field in California on behalf of and along-

side the Navy. Some of the defendants have also supplied and managed the federal government's Strategic Petroleum Reserve since the 1970s. And various defendants have received federal leases to retrieve oil from the Outer Continental Shelf and federal lands onshore.

The defendants argued that Chicago's suit relates to their federal work because the claimed damages result from the emission of greenhouse gases, which are impossible to partition between governmental and non-governmental sources. The district court disagreed and remanded to state court.

## II. Discussion

We have jurisdiction to review the district court's remand order under 28 U.S.C. § 1447(d), and we do so *de novo. See Betzner v. Boeing Co.*, 910 F.3d 1010, 1013–14, 1013 n.1 (7th Cir. 2018).

The federal officer removal statute provides a federal judicial forum to the United States government, its officers, and those acting under them for suits related to their federal acts. Specifically, "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof" may remove any civil or criminal action "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute's "'basic' purpose" is to protect the federal government from state-court "interference with its 'operations.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)).

To establish federal jurisdiction under § 1442(a)(1), the removing party must show that (1) it is "the United States, a federal agency, a federal officer, or a person 'acting under' a

No. 25-1916                                                              5

federal officer"; (2) the suit is "for or relating to any act under color of such office"; and (3) it has "a colorable federal defense" to the suit. *Chevron USA Inc. v. Plaquemines Par.*, 608 U.S. ___, ___, 146 S. Ct. 1052, 1057–58 (2026) (citations omitted).[1]

## A.

The second requirement—that the suit is "for or relating to any act" performed under color of federal office—is dispositive in this case, so we consider it alone.

As the Supreme Court has very recently explained, § 1442(a)(1)'s "relating to" language requires a "connection" between the conduct at issue in the suit and the federal duty. *Id.* at 1060; *see also Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020). The connection need not be "strictly caus[al]," *Plaquemines*, 146 S. Ct. at 1060, and the removing party therefore need not allege "that the complained-of conduct *itself* was at the behest of a federal agency," *Baker*, 962 F.3d at 944 (quoting *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015)). But the relationship must be more than "tenuous, remote, or peripheral." *Plaquemines*, 146 S. Ct. at 1061 (quoting *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 94 (2020) (Thomas, J., concurring)). The removal statute does not "reach all suits with any attenuated connection to federal duties." *Id.*

---

[1] We have previously broken these elements into four groups, rather than three. *See, e.g.*, *People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848 (7th Cir. 2024). We adopt the Supreme Court's most recent formulation here, which changes nothing substantively but makes it a bit easier to map our reasoning onto the Court's.

The removal statute does not reach this suit as Chicago has pleaded it. For purposes of this appeal, it is undisputed that the defendants have sold fossil fuels to, managed fossil fuels for, and produced fossil fuels at the direction of the federal government over the past century. But their most significant federal work (the World War II- and Korean War-era production) took place well before the events at issue in this litigation, which allegedly began in the 1970s. The connection between the defendants' production of fossil fuels to support mid-century war efforts and their alleged false advertising to consumers decades later is "tenuous, remote, or peripheral." *Id.*; *see, e.g.*, *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 144 (2d Cir. 2023) (holding defendant's actions during World War II did not satisfy § 1442(a)(1) because "World War II ended in 1945, and here, the conduct alleged … dates back no earlier than the 1950s"); *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 349–50 (4th Cir. 2024) (rejecting defendants' "reliance on military activity in the 1940s and 1950s as a basis for federal officer removal" because "[t]he actions identified in the complaint began decades later"); *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 156 (D.C. Cir. 2023) (rejecting a similar theory because there was "no relationship between actions taken by the Companies' predecessors in the 1940s and 1950s and the allegedly deceptive statements made by the Companies about climate change since 1980").

Even the defendants' more recent federal work—including their Cold War-era and current contracts to provide specialized fuels to the military, extraction of resources from government land, and supply and management of the Strategic Petroleum Reserve—is simply too attenuated from the conduct at issue in Chicago's suit to satisfy the "relating to" requirement of § 1442(a)(1). Recall the details of this suit: Chi-

No. 25-1916                                                    7

cago's complaint alleges that the defendants "mounted a dis-information campaign" in order to "deceive[] customers and the public" about "the climate impacts of their products." As a result, the complaint posits, consumers and the public used more fossil fuels than they otherwise would have, exacerbating climate-related harms, and the City seeks to recover for the resulting increased harm attributable to the increased fuel use. There is no allegation—by the City or by the defendants—that these alleged misrepresentations were directed at the federal government or involved the defendants' federal work, or that the federal government increased its *own* fuel purchases due to the alleged misrepresentations.

The sum the City hopes to recover is thus independent of the defendants' federal work. Indeed, to make this point doubly clear, the complaint expressly "disclaims injuries arising on federal property and those arising from Defendants' provision of non-commercial, specialized fossil fuel products to the federal government for military and national defense purposes. Plaintiff seeks no recovery or relief attributable to these injuries." While this disclaimer is simply the logical corollary of the City's theory of liability, it also has a "binding effect" on how the City conducts this litigation. Oral Arg. at 21:44–21:47. As the City itself described, "the disclaimer ensures that we can't … change our theory of liability or back out of things down the road in a way that would pose any risk" of implicating the defendants' federal work. Oral Arg. at 21:47–21:56.[2]

---

[2] Whether and how the City will quantify damages under its very limited theory of liability remains to be seen, of course, because this case is at the pleading stage. The defendants worry that doing so will require distinguishing federal and non-federal sources of greenhouse gas emissions,

8                                                              No. 25-1916

Nor does Chicago's suit risk "interference" with the federal government's "operations" in procuring fuel from the defendants. *Plaquemines*, 146 S. Ct. at 1057 (quoting *Watson*, 551 U.S. at 150). In considering that point, we have found the following question analytically helpful: If the conduct challenged in this suit were enjoined, would the defendants' federal work be compromised? Here, as the defendants acknowledged at oral argument, the answer is no. Oral Arg. at 1:45–2:09. If an Illinois state court enjoined the defendants from false advertising about fossil fuels, the defendants' federal work could continue unimpeded. That is another strong indication that the connection between the conduct at issue in this suit and the defendants' federal duties is insufficiently close to satisfy § 1442(a)(1)'s "relating to" requirement.

**B.**

We do not write on a clean slate. Just the opposite: Every circuit to consider a similar question in these climate-change deception suits has found federal officer removal unwarranted. *See Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 53 n.6 (1st Cir. 2022); *Connecticut*, 83 F.4th at 142–45; *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 712–13 (3d Cir. 2022); *Anne*

---

and they argue that such a quantification would need to happen in federal court. *See Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) (holding that differentiating injury between federal and non-federal sources is a "*merits question*[]" that a federal court should decide"). But if that happens, the defendants may try again to remove under § 1442(a) if they have a reasonable and good-faith basis to do so. There is no "absolute one-bite rule" to removal from state courts. *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 783 (7th Cir. 1999); *see also Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234, 238 (7th Cir. 2021) ("Removal is not a one-shot proposition. A defendant may remove even a previously remanded case if subsequent pleadings or litigation events reveal a new basis for removal.").

No. 25-1916                                                    9

*Arundel Cnty.*, 94 F.4th at 347–50; *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 714–16 (8th Cir. 2023); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755–60 (9th Cir. 2022); *Bd. of Cnty. Comm'rs. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1250–54 (10th Cir. 2022); *District of Columbia*, 89 F.4th at 155–57. Even more importantly, the Supreme Court recently cited with approval two of our sister circuits' decisions finding removal inappropriate under § 1442(a)(1) for many of the same reasons we consider today. *Plaquemines*, 146 S. Ct. at 1061 (citing *District of Columbia*, 89 F.4th at 156; and *Minnesota*, 63 F.4th at 715). In both cases, a locality had sued energy companies (including many of the same defendants present here) for violating local laws against deceptive advertising, and the plaintiffs in both cases sought to recover for the harms caused by the additional fossil fuel burned as a result of the defendants' deception. *District of Columbia*, 89 F.4th at 148, 156; *Minnesota*, 63 F.4th at 708. Like us, those federal courts remanded because the "false-advertising suit[s] targeting … oil compan[ies'] statements to consumers about the future effects of fossil fuels on climate change did not relate to" the defendants' previous federal production. *Plaquemines*, 146 S. Ct. at 1061 (citations omitted).

The defendants claim that our own precedent requires a different result, citing *Baker*, 962 F.3d 937. We disagree. *Baker* interpreted § 1442(a)(1)'s "relating to" requirement just like the Supreme Court later did in *Plaquemines*, expressly adopting a "connection" standard and eschewing a "rigid causation" requirement. *Id.* at 944. Applying that standard, *Baker* found removal appropriate for a lawsuit that differs in important ways from this one. The plaintiffs in *Baker* sought to recover for injuries directly caused by contaminated soil, when at least some of the soil contamination was caused by

10                                                              No. 25-1916

the defendants' wartime production of materials for the federal government. *Id.* at 940–41. Here, by contrast, no party contends that the defendants' alleged misrepresentations caused increased emissions during any work the defendants performed under direction of a federal officer. Nor does the suit necessitate (as of now, at least) the separation of damages due to federal work from damages due to non-federal work. *Baker* thus does not support removal here.

Finally, the parties debate at length whether, under § 1442(a)(1), the defendants' federal work must relate to the charged tortious conduct specifically, or whether the federal duties may instead relate more broadly to "the lawsuit as a whole"—including aspects of the suit like causation and damages. Both parties cherry-pick language from the Supreme Court's and our case law that seems to point in their preferred direction. *Compare* Plaintiff-Appellee Fed. R. App. P. 28(j) Letter at 1 (Apr. 24, 2026) (arguing that *Plaquemines* limits "for or relating to" to the "charged conduct" rather than "the lawsuit as a whole") (citations omitted), *with* Defendants-Appellants Response to 28(j) Letter at 1 (May 4, 2026) (arguing that *Plaquemines* agrees that "federal-officer removal requires courts to consider whether the lawsuit *as a whole* relates to the defendant's federally directed conduct"). Those dueling citations are possible because neither the Supreme Court nor our court has answered that question directly. And we see no reason to here. Even under the broader formulation favored by the defendants, Chicago's suit is insufficiently related to the defendants' federal duties to support removal.

* * *

The district court's judgment is

AFFIRMED.